## The York County Bank *versus* Carter.

*Transfer of Property for Payment of Debts.—Preference among Creditors, when allowed.—Sales and Transfers, when not technical Assignments for Creditors, nor void under the Statute of* 18 *Eliz.*

1. Where partners, being heavily indebted, transferred by deeds and bills of sale their entire property to another party, in consideration of the satisfaction of his claim against them, and his assumption to pay the balance of the purchase-money in discharge of the debts due certain other specified creditors, the transaction and sale, if *bonâ fide*, for a fair price, and with the honest intent to pay their preferred creditors, is not void because certain creditors are preferred, if there was no intent to hinder, delay, or defraud the others, which it is exclusively the province of the jury to determine.

2. An insolvent debtor may prefer one creditor to another, either by judgment, deed, or in any mode except by an assignment in trust, if his motive be an honest intent to pay the preferred debts, though the unpreferred creditors be delayed or wholly prevented from obtaining payment.

3. It was not error in the court to charge, that if the jury believe that the price agreed to be paid by the vendee was the full value of the property at the time, and the purchase-money was intended by both parties to be applied to the payment of particular debts of the vendors, there could be no "inference" that such sale was intended to delay or defraud unpreferred creditors, though they were excluded by the preference of those particular creditors.

4. A debtor may lawfully sell his property, in consideration that the purchase-money be paid to some of his creditors, to the exclusion or postponement of others, if it be done without any fraudulent design, and is a present application of his property to the payment of his debts.

5. It was not error in the court to refuse to charge, that the vendors being largely indebted at the date of the sale and transfer, and the vendee paying no money at the time, but only assuming to pay certain debts, to the exclusion of others to a large amount; he took no title by the bills of sale and conveyances from the vendors.

6. It was not error in the court to refuse to charge that the transaction, sale, and transfer amounted to an assignment in trust for certain preferred creditors, and was void because it had not been recorded. The papers imported a sale, not the creation of a trust for creditors, and though they might have shown by parol evidence that it was intended to create a trust for creditors, it was a question of fact for the jury, and not of law for the court.

7. The declarations of the vendor and vendee at the time of the delivery of possession under the sale, were admissible as part of the *res gestœ*, as was the paper by which the vendor assumed to pay the debts, to rebut the allegation of fraud; and also evidence that before the date of the sale, the vendee had borrowed money for the purpose of reloaning it to the vendors.

ERROR to the Common Pleas of *Schuylkill county.*

On the 31st of July 1858, the York County Bank obtained a judgment against John Carter, surviving partner of Richard

Carter, late partners doing business as J. & R. Carter, for $4592.74. A *fi. fa.* was issued thereon, under which the sheriff of Schuylkill county levied upon certain personal property, as the property of the late firm of J. & R. Carter.

The property levied on consisted of a coal lease from Smith & Buck to John & Richard Carter, on the Greenwood tract of land near Tamaqua, which had about three years to run; a coal lease from the Little Schuylkill Navigation, Railroad, and Coal Co., to John & Richard Carter, one slope No. 4, burnt out, one frame breaker-house, two frame engine-houses, four frame miner's houses, one and a half miles of said road more or less, thirty-five mules, three horses, one hundred and eighty-five drift cars, one frame blacksmith-shop, carpenter-shop, stone powder-house, frame office, about five tons of old iron, thirty-five sets of harness, lot of carpenter tools, a lot of blacksmith tools, screens, schutes, four wheelbarrows, three two-horse wagons, two four-horse wagons, two buggy wagons, one barrel of oil, lot of sheet iron, one bellows, lot of old car wheels, and other personal property.

This property was claimed by William T. Carter, whereupon the Court of Common Pleas directed an issue, in the usual form, between William T. Carter, as plaintiff, and the York County Bank, as defendants, to try the title to the property.

The material facts of the case, as disclosed by the testimony, were as follows:—

On the 1st of October, A. D. 1857, J. & R. Carter, who were largely engaged in the business of mining and selling coal, and also in the foundry and machine business, as members of the firm of Carters & Allen, and who were also owners of valuable real and personal estate, but also heavily indebted, by judgments and otherwise; by two bills of sale transferred to William T. Carter, their nephew, the coal leases and personal property embraced in the sheriff's levy, and, on the same day, conveyed to him all their real estate in Schuylkill county and elsewhere, by deeds duly executed, acknowledged, and recorded, all which were valued in the transfers at $114,500. On the same day, and at the same time, and in consideration thereof, William T. Carter entered into an agreement with John & Richard Carter, to pay the debts of certain of their creditors, who were named, amounting to $114,500, including a debt of $12,000 alleged to be due by them to him. Under these bills of sale and deeds, William T. Carter took formal and actual possession of the mines and movable chattels, and from that time worked and managed the mines on his own account. After the purchase by William T. Carter, he proceeded to pay off the indebtedness which he had assumed, and settle with the creditors generally. The defendants, alleging that these sales and transfers were

[The York County Bank *v.* Carter.]

fraudulent and void in law and in fact, offered in evidence proof that the firm were at the time indebted by judgment to the amount of $131,891.68; that a house and lot in Tamaqua, conveyed by J. & R. Carter to William T. Carter, for the consideration of $8000, was worth $12,000; that another deed, conveying all their real estate in Pennsylvania, worth, by estimate, $100,000, was executed for the nominal consideration of $49,250, without any description by metes and bounds.   That the property of the firm of Carters & Allen, worth $60,000, had also been transferred to W. T. Carter, when the indebtedness of that firm was equal to $71,000, which was afterwards arranged by a mortgage by John Carter and William T. Carter, for $58,312.16, to secure the creditors of Carters & Allen.   That Richard Carter had remained in the concern as the active business man and financier until his death, and had said that this transfer was to prevent the payment of certain debts which had been contracted by one McAuley, who had been their partner in Luzerne county, but that they intended to pay their own creditors.

In the course of the trial, several exceptions were taken to the admission and rejection of testimony, all which are stated at length in the specification of the errors assigned here.

The following points were submitted by the plaintiff and defendant, on which the instruction of the court was requested:—

Plaintiff's points.—1. That J. & R. Carter had the right to make a sale of property at a fair price, and arrange that the purchaser should apply the purchase-money to the payment of any of their debts they might designate.

2. That, if the jury believe that the price agreed to be paid by William T. Carter was the full value of the property at the time, and the purchase-money was intended by both seller and buyer to be applied to the payment of particular debts of J. & R. Carter, there can be no inference that such sale was intended to delay or defraud creditors whose debts were not provided for by the sale, although such sale necessarily resulted in giving the creditors whose debts were thus provided for a preference to the exclusion of creditors not so provided for.

3. If J. & R. Carter believed the demands of the creditors of Carter, McAuley & Co., had less equity than those of their other creditors on account of their nature and origin, and that they should be postponed until the others were paid, they had a right to prefer the others, and in doing so they did no more than any honest man under such circumstances ought to have done.

4. J. & R. Carter had a right to convey their property for a fair price to their other creditors, for the very purpose of paying them, and postponing plaintiff until they were paid.

Defendant's points.—1. If the bills of sale and conveyance by John & Richard Carter to William T. Carter were made

to delay, hinder, or defraud particular creditors, though made for a valuable consideration, they are not *bonâ fide*, but void; and if such are the facts, the defendants are entitled to a verdict.

2. That, even if the jury should find from the evidence that William T. Carter agreed to assume the payment of certain debts of John & Richard Carter as the consideration of the assignment of their property, but that the design was to hinder or delay other creditors from the collection of their debts which were not assumed by him, the transaction is void, and the defendants would be entitled to recover.

3. That, it being an undisputed fact in the cause that John & Richard Carter were indebted in more than $130,000 on the 1st of October 1857, the date of the transfer of their property to William T. Carter, and there being no evidence that he paid any money at the time of the transfer, but only assumed to pay certain debts particularly mentioned, many of which were liens on the real estate conveyed on that day, and it being proved that there were other debts to a large amount not assumed by him, those bills of sale and the transfer and conveyances in evidence gave him no title to the property which is now the subject of controversy, and are void as against the defendant in this suit.

4. That if the jury believe the evidence of Edwin Booth, F. N. Buck, and other witnesses in the cause, that Richard Carter and William T. Carter stated that the object of these assignments was to pay certain particular creditors, and the design and intention of the transfer of their property was to prevent, hinder, or delay another class of creditors, then the assignments were void, and William T. Carter has shown no title to the property in controversy, and the verdict should be in favour of the defendants.

5. If the jury should find from the evidence that the intention of conveyances of assignments from John & Richard Carter to W. T. Carter was to hinder, delay, or defraud creditors, no debts due to him nor payment by him to the creditors of debts due by John & Richard Carter would render those assignments valid; and should the jury so find, their verdict ought to be in favour of the defendant.

The court below (HEGINS, J.) answered all the points of the plaintiff in the affirmative; affirmed the first, second, and fifth points of the defendant; negatived the defendant's third point; and, in answer to defendant's fourth point, instructed the jury that, "if they believed, from the evidence in the case, that the design and intention of the transfer of the property by J. & R. Carter was to prevent, hinder, or delay any of their creditors, and William T. Carter knew of such design and intention, and participated in it, the transfer would be void as to the creditors intended to be hindered and delayed in the collection of their debts, the jury should find for the defendant." In the general

2 WR.—28

[The York County Bank *v.* Carter.]

charge, the court said : " The law does not forbid, nor is the mere fact that this preference has been given, evidence of fraud, if the intention was not to hinder, delay, or defeat the creditors not preferred, although the preference may produce that result. The question is, was the transaction *bonâ fide;* was the intention honest? This you are to decide from the evidence, in doing which it is proper to take into consideration the fact that the parties were uncles and nephew; the value of the property transferred; the means and ability of the plaintiff to pay; the fact that no security was required from him; the amount and character of the debts and encumbrances; and the conduct and declarations of the parties at and since the transfer."

Under these instructions there was a verdict and judgment in favour of the plaintiff in the issue; whereupon the defendant sued out this writ, and assigned as cause for reversal here the following matters, viz. :—

I. Because the court erred in their admission of the evidence as contained in the first bill of exceptions, which was as follows : Plaintiff proposes to prove by Robert Carter that upon the 1st of October, 1857, and after the execution of the bill of sale of the personal property, W. T. Carter went upon the premises in company with John Carter, one of the vendors, and then and there took formal possession of the property sold, and that John Carter then and there declared that J. & R. Carter had sold the property to W. T. Carter, and that he having delivered possession of the same, and that W. T. Carter then and there accepted such possession, and gave directions to witness and others in regard to the future management and care of the property.

(The defendant's counsel objecting to the declaration of W. T. Carter, and of John Carter, but to no other part of the offer.)

II. Because the court erred in the admission of the evidence contained in the second bill of exceptions, which was as follows : " For and in consideration of sundry conveyances to me by John & Richard Carter, and their wives, of certain real estate in the said conveyance more fully described, and in further consideration of the transfer and assignment of two coal leases from F. N. Buck, and John K. Smith respectively, to John & Richard Carter, and of two bills of sale, one of J. & R. Carter, and the other of Carters & Allen, of the personal property in the inventors attached to said bills of sale, more particularly mentioned, I have agreed and bound myself, my heirs, executors, and administrators, and do hereby agree and bind myself, my heirs, executors, and administrators, unto the said John & Richard Carter, and Carters & Allen, their and each of their heirs, executors, administrators, and assigns, to pay the foregoing mentioned and described debts and liabilities of the said J. & R. Carter and Carters & Allen, amounting in the whole to one hundred

[The York County Bank *v.* Carter.]

and fourteen thousand dollars ; witness my hand and seal, 1st of October 1857," signed, W. T. Carter : which was objected to because,

1. It is not rebutting evidence.

2. It amounts, taken in connection with the other papers, to a voluntary assignment, and has not been recorded, and

3. There is no evidence of its delivery ; being produced by the plaintiff himself.

III. Because the court below admitted the evidence contained in the third bill of exceptions, which was as follows : plaintiff offers to prove by William P. Jewel, that William T. Carter borrowed money from time to time to the amount of $6000, or thereabouts, for the purpose of reloaning the same to John & Richard Carter, prior to the 1st October, 1857.

(The defendant's counsel objecting to witness stating anything that was said by W. T. Carter, as to what he intended to do with the money borrowed.)

IV. Because the court admitted the evidence in the 4th bill of exceptions, viz : Plaintiff offers to prove the payment of indebtedness of J. & R. Carter to N. Sturtevant & Co.

V. Because the court erred in affirming the second point submitted by plaintiff's counsel.

VI. Because the court erred in affirming the 3d point, submitted by the plaintiff's counsel.

VII. Because the court below erred in affirming 4th point submitted by plaintiff's counsel.

VIII. Because the court erred in refusing to answer affirmatively the third point submitted by the defendant's counsel in the affirmative.

IX. Because the court below erred in their answer to the 4th point submitted by the counsel for the defendant, and in not answering the whole of it.

X. Because the court below erred in that part of their general charge to the jury in which they say : This the law does not forbid, nor is the mere fact that this preference has been given evidence of fraud, if the intention was not to hinder, delay, or defeat the creditors not preferred, although the preference may produce that result.

*James H. Campbell, Anson V. Parsons,* and *Edward Owen Parry,* for plaintiff in error, cited and relied on the following authorities :—

1. That the transaction was fraudulent as to creditors : Gans *v.* Renshaw, 2 Barr 36 ; Johnson *v.* Harry, 2 Penn. Rep. 82 ; Kepner *v.* Burkhart, 8 Barr 478 ; Serfoss *v.* Fisher, 10 Barr 184 ; Dean *v.* Connelly, 6 Barr 249 ; Chambers *v.* Spencer, 8 Watts 410 ; Irwin *v.* Keen, 3 Wh. 347 ; Passmore *v.* Eldridge,

[The York County Bank *v.* Carter.]

.12 S. & R. 198; Burr *v.* Ahl, 5 Casey 390; Irving *v.* Matley, 20 E. L. & E. Rep. 234.

2. That it was an assignment in trust for preferred creditors: Englebert *v.* Blanjot, 2 Wh. 240; Flannigan *v.* Wetherill, 5 Id. 286; Watson *v.* Bagaley, 2 Jones 167; and as illustrative of the policy of requiring clear proof of the existence of a bonâ fide sale to one claiming to hold the property of an insolvent debtor against his execution-creditors, they cited the following decisions under the Married Woman's Act of 1848, viz.: Gamber *v.* Gamber, 6 Harris 363; Raybold *v.* Raybold, 8 Id. 311; Bradford's Appeal, 5 Casey 514.

*R. M. Palmer, J. Ryan,* and *F. W. & J. Hughes,* for defendants in error, argued that the case involved no question of legal or constructive fraud, and that all questions involving fraud in fact were fairly and fully submitted to the jury, under instructions that were strictly in accordance with the law of the land, which, they contended, does not prohibit a man in failing circumstances from making a bonâ fide sale of his property for a full price, and thus turn the entire proceeds over in payment of his debts, rather than retain it until it is levied upon and sacrificed at a forced sale by the sheriff.

The opinion of the court was delivered, March 11th 1861, by

STRONG, J.—In the court below, the bill of sale and the conveyances from J. & R. Carter to William T. Carter were assailed on the ground of alleged fraud in fact, and here was the main battle-ground in the case. The defendants contended that they were made to delay, hinder, or defraud particular creditors, and were consequently void as against those creditors.

The several transfers of property had been made ostensibly to provide for the payment of certain creditors of J. & R. Carter. It was alleged that William T. Carter, the transferree, was a creditor to a considerable amount, and that the consideration for the conveyances to him was the satisfaction of the claim which he held against the grantors, and his assumption to pay the balance of the purchase-money in discharge of the debts due certain other specified creditors. It was distinctly submitted to the jury to find whether the transaction was bonâ fide; whether the intention of the parties was honest; whether the sale was for a fair price; whether William T. Carter was in truth a creditor to the extent claimed by him; and whether the bills of sale and conveyances were made with the honest intent to pay the debts of J. & R. Carter, or with a design to hinder, delay, or defraud those creditors to whom the purchase-money was not stipulated to be paid.

If we may judge from the points presented in the court below

and from their argument here, the pervading idea of the plain-tiffs in error seems to have been that the conveyances to William T. Carter were void under the statute of 13 Eliz., because their *effect* was to postpone the creditors of J. & R. Carter not pre-ferred, to those creditors to whom the purchase-money was stipu-lated to be paid. There is, however, a distinction to be observed between the effect of a conveyance by a debtor in failing circum-stances made to pay one or more of his debts, and that intent to hinder and delay his other creditors, against which the state of 13 Eliz. is aimed. An insolvent debtor may prefer one creditor to another either by judgment or deed, in any mode except by an assignment in trust. The *effect* of such preference may be to delay a creditor not preferred, in fact to prevent his obtaining payment at all; but if the motive, the honest intent, was to pay the preferred debt, the transaction is not invalidated by the statute. The statute of 13 Eliz. is aimed only at intended fraud. But the payment of a debt to one creditor is no fraud upon another creditor, no legal injury to him. It was remarked incidentally by Chief Justice Gibson, in Gans *v*. Renshaw, 2 Barr 36, that "though an insolvent debtor may give such pre-ferences to particular creditors as he may see proper, yet if the motive be not payment of his debts, but, in the language of the statute, to 'delay, hinder, or defraud' particular creditors, the conveyance, though made on valuable consideration, is not *bonâ fide*, and therefore not saved by the 'proviso." This, however, does not militate at all against the well settled doctrine that a debtor may prefer one creditor to another intentionally, and if his honest purpose be to pay a debt, the preference is not fraud-ulent, either in law or in fact. Other creditors may be delayed and hindered, but "not in a fraudulent manner," as was said by Tilghman, C. J., in Wilt *v*. Franklin, 1 Binn. 514. Whether the conveyances to William T. Carter were in truth made for the payment of debts, or whether there was a fraudulent inten-tion to hinder, delay, or defraud other creditors of J. & R. Car-ter, was, as we have said, fairly and distinctly submitted to the jury.

We have made these remarks as introductory to a considera-tion of the specific assignments of error, because they bear more or less directly upon them all.

The plaintiffs in error complain that the court affirmed the second proposition of the plaintiff below, which was, "that if the jury believe that the price agreed to be paid by William T. Carter was the full value of the property at the time, and the purchase-money was intended by both seller and buyer to be applied to the payment of particular debts of J. & R. Carter, there can be no inference that such sale was intended to delay or defraud creditors whose debts were not provided for by the

sale, although such sale necessarily resulted in giving the creditors whose debts were thus provided for, a preference, to the exclusion of creditors not so provided for."

If the remarks which we have already made are correct, there was no error in affirming this proposition. The "inference" spoken of, is one to be drawn from the supposed facts enumerated in the point, and the jury had no right to infer fraud from those facts alone. We have already shown that a sale by a debtor, at a full price, intended by both buyer and seller for the payment of particular debts of the vendor, is a lawful sale, and none the less so because other creditors may be prevented or hindered by it from obtaining payment. Such is the doctrine of Uhler *v.* Maulfair, 11 Harris 481; and such is everywhere the doctrine of the common law, except where a bankrupt law exists. There is no warrant for the assertion that the court took away from the jury the right to find whether the sale was made with an intent to hinder, delay, or defraud any creditors. On the contrary, if there is any one thing prominent in the whole charge, it is the submission to the jury to find from the whole evidence whether there was such an intent. Thus, in addition to very much in the general charge, the court said, in answer to the first and second points of the plaintiffs in error, that, if the bills of sale and conveyances by J. & R. Carter to William T. Carter were made to delay, hinder, or defraud particular creditors, though made for a valuable consideration, they are not *bonâ fide* but void. And again, that even if the jury should find from the evidence that William T. Carter agreed to assume the payment of certain debts of J. & R. Carter as the consideration of the assignment of their property, but that the design was to delay or hinder other creditors from the collection of their debts, which were not assumed by him, the transaction is void. And once more; "If, after a fair and careful consideration of the proof given by both parties to this issue, you come to the decision that it was the intention of the parties to the bills of sale to hinder, delay, or defeat the creditors not preferred, you will render your verdict for the defendants." Much more of a similar character might be added, but this is enough to vindicate the court against the allegation that they restrained the jury from drawing any just inference of fraud from any of the facts in evidence. A sale for a full price with no reservation, for the purpose of paying certain debts and with that intent, is a lawful and honest transaction. Whether it was such a sale was left to the jury. If it was, then no unfavourable inferences were to be drawn from it. A jury is not at liberty to deduce fraud from that which the law pronounces honest.

The next error assigned to the charge is, that the court affirmed the plaintiff's third point. That point was, "that if

J. & R. Carter believed the demands of the creditors of Carter, McCauley & Co., had less equity than those of their other creditors, on account of their nature and origin, and that they should be postponed until the others were paid, they had a right to prefer the others, and in doing so they did no more than any honest man under such circumstances ought to have done."

The answer of the court is justified by what was said in Uhler v. Maulfair, 11 Harris 481. It was nothing more than an affirmance of the right of a debtor to prefer one creditor to another, though the effect of the preference be to postpone the one not preferred.

The same remarks are applicable to the exception taken to what was said by the court in answer to the plaintiff's fourth point. It is not to be doubted that a debtor may lawfully sell his property in consideration that the purchase-money be paid to some of his creditors to the exclusion or postponement of others, if it be done without any fraudulent design, that is, without any other intention than to prefer one to the other. He may not, indeed, sell to one creditor in payment of his claim and take securities for the residue of the consideration, payable at a distant day, though he designs them to pay other creditors, for that is not a present application of his property to the payment of debts, and that is all which was decided in Burkhart v. Kepner, 5 Barr 478.

All the points proposed by the plaintiffs in error to the court below, were affirmed without qualification, except the third and fourth. It is now assigned for error that the court refused to affirm the third. We quote that point at length. It was, "that it being an undisputed fact in the cause, that John and Richard Carter were indebted more than $130,000, on the 1st of October 1857, the date of the transfer of their property to William T. Carter, and there being no evidence that he paid any money at the time of the transfer, but only assumed to pay certain debts particularly mentioned, many of which were liens on the real estate conveyed on that day, and it being proved that there were other debts to a large amount not assumed by him, those bills of sale and the transfer and conveyances in evidence gave him no title to the property which is now the subject of controversy, and are void as against the defendants in this suit."

Here we have the court asked to rule, as a matter of law, that the conveyances were void, and that without any regard to the question whether they were intended to hinder or delay creditors. The request is but a reassertion of the principle which we have shown to be not well founded—that a debtor in failing circumstances may not sell his property for a full price, and direct all the consideration for the sale to be paid in discharge of a portion of his debts; in other words, may not prefer one

creditor to another. The court had no right to take the case from the jury, as requested, for there was nothing in the transfers themselves, nor in them coupled with the facts that J. & R. Carter were largely indebted, and that the sale was made to secure the payment of certain debts rather than others, that made the transaction a legal fraud.

There is another view of this point which has been presented in the argument here, that seems not to have been urged in the court below. That court was not asked to instruct the jury respecting it, and if it was alluded to at all, it was only darkly shadowed forth. It is that the transaction of October 1st 1857, between J. & R. Carter and William T. Carter, amounted to an assignment in trust for certain preferred creditors, and as the statutory requirements to protect assigned property against execution-creditors, to wit, recording, had not been complied with, the court should for that reason have declared the transfers void. The difficulty in the way of this view is, that the bills of sale and conveyances on their face import a sale, and not the creation of a trust for the benefit of creditors. If the transaction was in fact an assignment, and not a sale, it required to establish it as such, other evidence than what was furnished by the papers. Doubtless, the conveyances might have been shown by parol evidence to have been intended to create a trust for creditors. Whether it was so shown was a question for the jury, and not for the court. But had the court affirmed the third point of the plaintiffs in error, they would have passed conclusively, not only upon the credibility of witnesses, but upon the amount and meaning of the parol evidence. We think, moreover, that this aspect of the case is not fairly presented by the point. The attention of the court was called to the validity of a transfer in consideration of an assumption to pay certain debts, while there were other debts not assumed, and we think there was no error in the refusal to give the instruction requested.

The remaining exceptions to the charge are without merit. The fourth point of the plaintiffs in error was substantially answered. That part of it which was not affirmed, is not correct as a legal proposition. Nothing in the declarations of Richard Carter or William T. Carter, as proved by Booth and Buck, conclusively establish that the conveyances were void, or authorized the court to pronounce them void.

Little need be said of the exception taken to the admission of evidence. The declarations of John and William T. Carter, made while possession was being delivered of the transferred property, were a part of the *res gestæ*, and clearly admissible as such.

So was the paper by which W. T. Carter assumed to pay the debts admissible. It was in direct rebuttal of the allegation of

[The York County Bank *v.* Carter.]

fraud. Whether it had been delivered or not was for the jury. It bore even date with the bills of sale and the conveyances, and was attested by the same witness.

The third bill of exceptions was to the permission given to the plaintiff below to prove that, prior to October 1st 1857, he had borrowed money for the purpose of reloaning it to J. & R. Carter. It is objected that thus he was allowed to give in evidence his own declarations. This was, however, not so to the injury of the plaintiffs in error. The witness proved no declarations of William T. Carter. His testimony was, that he loaned to him $6000, and received for it J. & R. Carter's paper, endorsed by him. Clearly this was unobjectionable.

The remaining assignment of error is not pressed, and cannot be, successfully.

The judgment is affirmed.