In re A. L. ROBERTSHAW MFG. CO.

(District Court, E. D. Pennsylvania. December 5, 1904.)

No. 1,444.

1. FRAUDULENT CONVEYANCES—TRANSFER OF PROPERTY—PREFERENCE.
    Where a debtor conveyed his property to certain creditors, with intent to pay debts owing to them, the fact that such transfer postponed other creditors, as the debtor intended, and that the creditor aided in such intent as well as to protect himself, did not invalidate the transaction, in the absence of a fraudulent design.

2. SAME—EVIDENCE.
    A debtor being in failing circumstances, his creditors called a meeting, and agreed on a plan for the organization of a corporation to be managed by a committee of the creditors for the purpose of paying the claims. The debtor transferred all his assets, which were appraised at only one-half the amount of the debts, to such corporation; it being agreed that all the debts under $100 should be first paid in full, and that the balance should be paid from the earnings of the corporation. The debtor was employed to manage the business of the corporation on a salary, and it was agreed that, in case the corporation should be wound up, any surplus of assets should be paid to him. *Held*, that such transfer was not fraudulent as against the debtor's nonparticipating creditors.

**3. SAME—BANKRUPTCY.**

Where a debtor in failing circumstances transferred his property to a corporation formed for the purpose of operating the same at the instance of the creditors, and thereafter such corporation was declared a bankrupt, but no proceedings in bankruptcy were ever instituted against the debtor individually, the transfer was not in fraud of the bankrupt law.

**4. SAME—SUBSEQUENT AGREEMENTS.**

An agreement between debtor and creditor, made after the assignment, that, if the debtor could sell the property for more than a certain amount, he could have the difference, did not invalidate the transfer as against creditors.

On Motion to Confirm Referee's Report.

John Dickey, Jr., for trustee.

Alexander Simpson, Jr., for attaching creditor.

HOLLAND, District Judge. This is a motion by petitioner for the confirmation of the report of a referee in bankruptcy, in which report the referee recommends that a rule for judgment against the bankrupt's estate, garnishee, be made absolute, and the trustee in bankruptcy, Smith Longbottom, be directed to pay out of the fund in his hands arising from the sale of property attached the full amount of the debt, interest, and costs of said attachment.

The material facts involved in a proper disposition of this motion are as follows:

A. L. Robertshaw, a manufacturer, became embarrassed in 1901, and in consequence there was a meeting of a number of his creditors, at which meeting a committee was chosen, consisting of Louis A. Levin, Smith Longbottom, A. T. Eastwick, Henry T. Kent, and Charles H. Salmon. This committee of five, together with others of the creditors, devised a plan of settlement with A. L. Robertshaw, to which he assented, and which was embodied in an agreement dated September 11, 1901, by which he was to turn over all his property to a corporation to be formed; amounting, according to the appraised value, to $20,000 in machinery and $20,000 in other assets, making a total of $40,000. Under the provisions of this agreement, all the creditors of A. L. Robertshaw having claims less than $100 were to be paid in full. All the other creditors having claims exceeding $100, amounting to a total of about $80,000, excepting the Imperial Woolen Company, signed this agreement, and the payment of their claims was provided for as follows: All the creditors with claims over $100, unsecured, are parties of the first part; other creditors with claims over $100, partly secured, are parties of the second part; A. L. Robertshaw, party of the third part; and the committee of five, above named, party of the fourth part. Following this is a recital that the "third party is not able to pay his debts in full to the parties of the first and second parts at the present time, and the parties to the agreement being desirous of adjusting their claims against the third party, this agreement is made." Under its terms Robertshaw agrees to transfer to the committee of creditors "all cash, book debts, stock in hand, merchandise, machinery and fixtures, actions, right of action, claims and demands, and all other personal and real property which

he, the said third party, now possesses or to which he may be entitled," who in turn agree to organize a corporation, to be known as the A. L. Robertshaw Manufacturing Company, and transfer this property to this corporation for the purpose of conducting the same business in which Robertshaw was engaged. This corporation was organized under the laws of Delaware on October 3, 1901, with a capital stock of $40,000, and the property of Robertshaw, valued at $40,000, was transferred to it. The stock of the corporation was issued to the committee of creditors, who issued certificates to the creditors for the amount of their indebtedness. These certificates were to be paid out of the dividends as earned—first, to those who would take the smallest percentage for their claim, and, failing any offers of a reduction in the claim of any creditor, the dividends to be divided pro rata until the payment of the claim in full, without interest, was made. In case the committee concluded to wind up the concern, the assets were to be distributed to the creditors to the full amount of their respective claims, if sufficient assets existed; the surplus to be paid to Robertshaw.

At the request of the creditors, Robertshaw agreed to conduct the business under the supervision of the committee, at a reasonable salary to be fixed by them, and it was stipulated that he at any time should be permitted to purchase the entire plant at a price "not less than forty per cent. of the face value of his whole indebtedness." This plan of payment was devised by the creditors and the committee, and subsequently agreed to by Robertshaw, upon its being represented to him that it was the most feasible way of paying his obligations and protecting his creditors; and it is conceded that it was the intention that all creditors should be included, as the petitioner's name appeared in the agreement as one of the parties of the first part, although it did not sign, for the reason stated by the president, James Dobson, when Mr. Joseph H. Truitt called upon him, prior to the transfer of the property, that "he would have nothing to do with a joint-stock company, as Mr. Robertshaw had already failed previously, and he proposed to take just what there was in it, whatever it would be." The creditors and their committee proceeded with the execution of the agreement and their plan of payment under the impression that there would be no objection on the part of the Imperial Woolen Company, petitioner. The A. L. Robertshaw Manufacturing Company began business in October of 1901, with Robertshaw as manager.

On January 23, 1902, the Imperial Woolen Company brought suit in the common pleas of Philadelphia county against A. L. Robertshaw for the amount of their claim against him, and judgment was obtained March 21, 1902, for want of an affidavit of defense. On April 12, 1902, damages were assessed in the amount of $1,723.16, and on the same day an attachment sur judgment was issued, and served upon the A. L. Robertshaw Manufacturing Company, as garnishee, April 14, 1902. Interrogatories were filed in the attachment proceedings, and proceedings were in progress for the purpose of obtaining judgment. In the meantime the business conducted by the A. L. Robertshaw Manufacturing Company was unsuccessful, and on September 12, 1902, an involuntary petition in bankruptcy was filed. Smith Longbottom was appointed receiver on September 22, 1902, and, on the

same day this court entered a restraining order against the Imperial Woolen Company, this petitioner, restraining it from proceeding further with the attachment proceedings in the common pleas court of Philadelphia against the A. L. Robertshaw Manufacturing Company, garnishee. October 9, 1902, A. L. Robertshaw Manufacturing Company was adjudicated a bankrupt; and on November 14, 1902, Smith Longbottom was appointed trustee, who on the 24th of the same month was ordered by this court to sell all the property of the bankrupt, "discharged from all liens, attachments, and incumbrances," and "directing that these liens be charged upon the fund until their validity is determined." The property was sold by the trustee on the 9th day of December, 1902, and $15,000 realized, which is now in the hands of the trustee.

On April 15, 1903, after argument, Judge McPherson, of this court, refused to vacate the restraining order made September 22, 1902, and on May 25, 1903, this petitioner presented a petition to this court, upon which a rule was granted on the trustee to show cause why the claim of the petitioner, to wit, $1,723.16, should not be paid out of the fund in the hands of the trustee in bankruptcy. The matter was referred to a referee, who filed a report in this court May 20, 1904, wherein he holds, first, that the transfer of property by A. L. Robertshaw to the A. L. Robertshaw Manufacturing Company in payment of his debts under the agreement was fraudulent as to the petitioning creditor; that the attachment sur judgment, having been issued against the A. L. Robertshaw Manufacturing Company more than four months prior to the filing of the involuntary petition in bankruptcy, is a valid lien upon the bankrupt's assets, and should be paid in full out of the proceeds in the hands of the trustee, and recommends the payment of the claim out of the bankrupt's estate.

The first question to be considered is whether or not the position taken by the referee, that the transfer of the property of A. L. Robertshaw to the A. L. Robertshaw Manufacturing Company, under the circumstances, is a fraud, in law, as to the petitioner, a creditor not assenting to this transfer.

It is well settled in Pennsylvania that an insolvent debtor may prefer one or more creditors, either by judgment, deed, or in any mode, except by assignment in trust, if his motive be an honest intent to pay the preferred debts, though the unpreferred creditors be delayed or wholly prevented from obtaining payment; and, where the proceeds of the property were intended by both parties to be applied to the payment of particular debts of the transferror or vendor, there could be no inference from such sale or transfer that it was intended to delay or defraud unpreferred creditors. Though they were excluded by the preference of those particular creditors, so long as it is done without fraudulent design, and is a present application of the transferror's property to the payment of his debts, it is lawful. York County Bank v. Carter, 38 Pa. 446, 80 Am. Dec. 494. The Supreme Court of Pennsylvania, since the decision in York County Bank v. Carter, supra, has held that, where a creditor gives a judgment or makes a conveyance or payment in any form to secure an actual debt, the transaction will be valid against

other creditors, although he knew (1) that the effect would be to postpone others; (2) that the debtor intended it to have that effect; and (3) although the creditor did it to aid that intent, as well as to protect himself. The criterion is not the effect, but the fraudulent intent. Without that the transaction cannot be impeached. Shibler v. Hartley, 201 Pa. 286, 50 Atl. 950, 88 Am. St. Rep. 811; Werner v. Zierfuss, 162 Pa. 360, 29 Atl. 737. This principle is upheld by the United States Supreme Court in Clarke v. White, 37 U. S. 178, 9 L. Ed. 1046.

There can be no question but that this transfer was made for the payment of existing indebtedness, and honestly made for that purpose; nor is there any evidence of fraud or fraudulent intent arising from inadequacy in price of the property, because the indebtedness of those joining in the agreement, and exclusive of those claims under $100, amounts to twice the appraised value of the property transferred, and the property transferred consists partly of machinery, which has been in use, and book accounts.

I am unable to assent to the propositions contended for on the part of the petitioner, that the transfer is void as to the nonassenting creditors, for the reasons (1) that it is not in the interest of the creditors, but an agreement in the interest of the debtor; (2) that it provides for the return of property to Robertshaw before his debts shall have been paid in full; (3) that it is in fraud of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

The whole transaction, from its inception, shows that the transfer was in the interest of creditors. Robertshaw did not devise it or suggest it, but assented to it as the best method of paying his honest indebtedness. His employment was for the advantage of the creditors, whose claims he was honestly endeavoring to liquidate, and he contracted to work for them for three years. There was a present appropriation of all his property for the payment of the creditors he preferred. The amount of property he transferred was much less than their claim, and the only hope that he could have for any advantage was what he would contribute in the future toward the development of that property, first, for the further enhancement of it, in order that the deficiency in his indebtedness might be liquidated; and then all over and above that which his industry could produce, it was agreed, should be returned to him. Certainly this is an honest effort to pay an honest indebtedness.

It is evident that the property transferred could only pay a small percentage of his indebtedness, and it was the purpose of the creditors, no doubt, in employing Robertshaw, and giving him an option to purchase the property, and offering to return it, should he, through his industry and effort, succeed in making the enterprise a success, and thereby paying off his creditors, to stimulate him to extra exertion and industry in the conduct of the business committed to his management.

It is plain that the interest Robertshaw has in any surplus is of no value unless he makes the enterprise a success. There can be no surplus in the property transferred, as that was only about one-half of the amount of the indebtedness for which it was transferred, so that

any advantage or interest he could claim therein would be only such as he would create in the future in connection with them through his industry; and a part of this was to be appropriated to these creditors, as the agreement called for a payment of a greater per cent. of their claims than the appraised value of the property transferred would make, so that the increased value could only result from Robertshaw's labor. This he was induced to contract for with the evident hope that he could further aid his creditors, and probably earn something for himself. Is there any fact or circumstance in all this from which an inference of fraud can be drawn? It cannot arise from the fact of his employment as manager of the Robertshaw Manufacturing Company, for this was done for the benefit of the creditors, in order that they might be able to conduct the business successfully. Cameron v. Montgomery, 15 Serg. & R. 128; Smith v. Craft (C. C.) 17 Fed. 705; Id., 123 U. S. 436, 8 Sup. Ct. 196, 31 L. Ed. 267. This question is elaborately considered in a note to Feder v. Ervin, 36 L. R. A. 356. See, also, note to Rice v. Wood, 31 L. R. A. 633. Nor is there anything inconsistent with an honest purpose, either in the debtor or creditors, in the fact that Robertshaw may purchase the property in the future, or that he was to have a return of any surplus remaining after payment of indebtedness without interest. The facts and circumstances in the case show all this was done for the benefit of the creditors, as it is plain that the price at which he was allowed to purchase was in excess of the value at the time of the transfer, and there could be no surplus returned after payment of claims without interest, unless Robertshaw, as manager of the business, created that surplus by a successful conduct of the plant after the transfer, as the property transferred was only about 50 per cent. of the claims. Nor can it be said that the transfer and agreement are in fraud of the bankruptcy law, as no proceedings in bankruptcy have ever been instituted against Robertshaw individually.

This case is entirely free from any secret or avowed reservations by which the transferror retains some benefit for himself other than the payment of his debt, found in connection with that class of cases where a transfer of property is held to be a fraud in law, because of such reservation. Where the transaction, as in this case, was open and above board, without any secret reservation, it is not contrary to law. As was said by the court in McCulloch v. Hutchinson, 7 Watts, 435, 32 Am. Dec. 776:

"It is the secrecy of this trust—a trust incompatible with that which appears on the face of the transaction—that constitutes its illegality. When the trust openly constitutes a part of a verbal assignment, or is apparent on the face of a written instrument, no harm is done. The creditor is informed of the nature of the conveyance and of the destination of the property, so that he can, with full information, avail himself of his legal remedies for a resort to that surplus. No more is effected by conveyance with such a stipulation on the face of it than the law would annex without it."

In this case the transfer of the goods was held fraudulent and void because of the secret agreement, and for the same reason it was held in the following cases that the transfer of property was fraudulent and void: Passmore v. Eldridge, 12 Serg. & R. 198; Shaffer v. Watkins, 7 Watts & S. 219; Bentz v. Rockey, 69 Pa. 71.

133 F.—36

In the case of Connelly **v.** Walker, 45 Pa. 454, a sale of property was held fraudulent because of a secret trust, and in passing upon the question the court used this language:

"This was the question in the cause, and the only fact on which it depended was the secret trust. This being found—and, if proved, it should have been found—it was the duty of the judge to pronounce the transfer fraudulent as to creditors, however fair in itself. And the character of the transfer was determinable altogether by the fact of trust or no trust, and not by the circumstance of Benford's indebtedness to Knable and Sanner, nor by the eventual profits or losses."

The federal courts hold the same view. Huntley v. Kingman, 152 U. S. 527, 14 Sup. Ct. 688, 38 L. Ed. 540.

A stipulation in an agreement for the transfer of property to secure payment of a debt due the transferee that any balance remaining after the payment of the debt shall be paid as the transferror may direct does not render the agreement void as against creditors of the transferror. Vallance v. Miners' Life Insurance & Trust Co., 42 Pa. 441; Huntley v. Kingman, 152 U. S. 527, 14 Sup. Ct. 688, 38 L. Ed. 540. Nor does an agreement between debtor and creditor, made after the assignment, that, if the debtor could sell the property for more than a certain amount, the debtor could have the difference. Davis v. Hukill, 173 Pa. 138, 33 Atl. 882. Nor will a parol agreement, made at the time of assignment of property for the payment of debts, that the residue of the proceeds after payment of the debt shall be returned to the assignor, of itself render the transfer fraudulent, so long as the property transferred bears a reasonable proportion to the debt provided for. Rahn v. McElrath, 6 Watts, 153.

As this transaction, upon the face of it, convinces me of its fairness, and as this view is sustained by the evidence, the transfer must be sustained, and, as a consequence, the other question involved need not be considered.

The motion to make the recommendation of the referee absolute is refused, and the petition is dismissed.