## Shaffer *against* Watkins.

A transfer of personal property which creates a trust, whether secret or avowed, in favour of the grantor, renders the transaction fraudulent and void in legal contemplation, even though there may be mingled with it provisions in favour of preferred creditors.

The proceeding under the Act of the 16th June 1836, relating to executions, which authorizes a bill of discovery, is not confined to a mere discovery of the goods, chattels and effects of the defendant, so as to enable the plaintiff to proceed with his execution; but when the defendant and garnishee are brought into court by *scire facias*, and interrogatories are filed and answered, the court may, if fraud be discovered, render a joint judgment against the original defendant and the garnishee for the plaintiff's debt, upon which an execution may issue against them.

A *fieri facias* and *alias fieri facias* cannot legally issue and be made returnable to the same term.

ERROR to the Common Pleas of *Perry* county.

Watkins, Dungan & Rust against Daniel Shaffer and Washington Shaffer. This was a proceeding under the Act of 16th June 1836, relating to executions.

The plaintiffs obtained a judgment against Daniel Shaffer, upon which a *fieri facias* and attachment were issued, which was returned, served upon Washington Shaffer as garnishee. On the 29th July 1843 a *scire facias* was issued against Daniel and Washington Shaffer, and a petition was presented to one of the Judges of the court of Perry county by defendants in error, setting forth the judgment, and that they had reason to believe that Daniel Shaffer had personal property to satisfy the judgment, &c., but that he had transferred the same to his son Washington, and that Washington was in possession of the said property; and praying the Judge to award a *scire facias* directed to the said Daniel and Washington, to appear and answer to the charge against them, to

answer interrogatories, and to abide the judgment of the court in the premises. The writ of *scire facias* contained a recital of the judgment, the alleged transfer of the personal property by Daniel to Washington Shaffer, by reason whereof the said plaintiffs in the judgment could not have execution of the same, and that Washington Shaffer was in possession of the property, and reciting also the order of Judge BLACK awarding the *scire facias*, &c., and concluded by notifying the said Daniel and Washington to appear before the Court of Common Pleas, &c., to answer the bill and all such interrogatories as should be propounded to them, or show cause why they should not, and to abide the judgment of the court in the premises, &c.

The defendants appeared to the *scire facias*, whereupon the plaintiffs filed interrogatories to be propounded to each of the defendants.

Washington Shaffer appeared in open court, and being duly sworn deposes and says, in answer to the interrogatories filed, as follows, to wit:

To Interrogatory No. 1. He deposes and says, that on the 7th day of July 1842 this deponent purchased the store then belonging to his father, in Bloomfield, from his father; the terms of which purchase are set forth in a written agreement hereto attached and made part of this answer. The agreement was made and the paper written the time it bears date, and was executed before John B. Carson, the subscribing witness, and that this deponent then took possession of the store as his own, and has so continued ever since. He has sold out a large quantity of the original stock, and laid in fresh supplies at two different times by purchases in Philadelphia, to an amount over $2000, before this writ was issued.

Answer to No. 2. Part of the goods now in the store are some of the stock brought to Bloomfield by me in the spring of the year 1842, and part of those I purchased since. The store belonged to my father when removed here in 1842 by me, acting as clerk or agent for my father.

Answer to No. 3. Deponent says that an inventory was taken of the goods and stock at the time the store was removed from Mercersburg, in Franklin county, to Bloomfield, and a regular appraisement or valuation was made at the original cost and carriage; that the inventory and appraisement amounted to $3801.87; the said inventory is hereto annexed and makes part of this answer. In consideration of the quality of goods, and the prices and term of payments, there was a deduction of 5 per cent. made upon the gross amount of the stock. After its deduction, together with a deduction of $890 on account of goods and moneys taken out by Daniel Shaffer, the remainder amounted to the above sum of $3801.87.

No. 4, Answer. An inventory was made just before the removal

from Mercersburg, and it is hereto annexed and makes part of this answer.

No. 5, Answer. The deponent says he purchased the said goods from his father *bonâ fide*, and did not receive them as a gift, and agreed to pay the full value. The terms are set forth in the agreement dated 7th of July 1842, and hereto annexed, and there were no other or different terms from those expressed in the said agreement. The same agreement sets out the consideration, the time and manner in which it was to be paid.

No. 6, Answer. Deponent says he has paid of the purchase money or consideration, in pursuance of the purchase and agreement, the sum of $1227.53, as appears by the statement hereto annexed, which makes part of this answer, and shows the time when paid, and to whom paid. After deducting said payments, the residue of the purchase money of the said store remains unpaid, and is payable according to the agreement of the parties, and annexed to this answer.

No. 7, Answer. Deponent says there was no agreement, stipulation or undertaking by me, as part of the consideration of said transfer, to pay an annuity or any gross sum to my grandmother, Mrs Shaffer, in consideration of her releasing her interest in a recognizance in the Orphans' Court of Franklin county, which bound real estate sold by my father in the spring of the year 1842, as set forth in this interrogatory. Deponent understood that his grandmother, Mrs Shaffer, had released to his father the lien of certain recognizances in Franklin county, and his father had given a note with security to Mrs Shaffer for the payment of the sum stipulated between them to be paid to her. The bond given by my father to my grandmother is dated the 20th March 1841, signed by Daniel Shaffer, J. H. Murphy, J. H. Williamson and J. B. Carson, and this deponent; but owing to the minority of the deponent he did not sign the said bond as surety till he came of age, viz., about the 1st of February, A. D. 1842. This transaction had no relation or connexion in any way with the subsequent purchase of the store. A copy of the bond referred to is hereto annexed and makes part of this answer.

No. 8, Answer. Deponent was to pay the interest on the $2000 to his grandmother during her natural life, and to pay the said principal sum of $2000 to his father one year after the decease of the said Mrs Shaffer, whom deponent understood to be over 70 years of age, &c. The time for the payment of said interest and principal deponent gave his note, dated the 7th July 1842, which note makes part of this answer, being hereto annexed. The note referred to, and hereto annexed, shows the manner in which said payments were to be made; and there were no other or different terms agreed upon, as before stated. The releasing of the lien had no part or connexion with the transaction.

No. 9, Answer. There were no such stipulations or agreement

VII. — T *

as set forth in this interrogatory. The whole terms and stipulations are set forth in the note referred to, and in no event was the store to be taken back, or to be returned by me to my father. The purchase was absolute and unconditional.

No. 10, Answer. I did agree to pay the principal $2000 to my father one year after the death of my grandmother, and did give him a note, being the same above referred to and attached. It was executed and delivered on the day of its date, and not since the commencement of the proceedings referred to in this interrogatory.

No. 11, Answer. Deponent answers this interrogatory in the negative out and out, except so far as regards the liability upon the note above referred to when it shall fall due.

No. 12, Answer. Deponent says that the proceeds of the store are applied by deponent to the debt of my father before referred to, which I assumed and agreed to pay as part of the purchase money of said store, and not to any other, or in the way my father designates or has designated.

No. 13, Answer. Deponent says that the contract on his part was fair and honest, according to its import. He knew at the time his father was indebted to different persons, but he believed he had ample means to pay them all. It was no part of the object of the transfer, so far as deponent knows or ever did know, to prevent the creditors of his father from taking the goods in execution for his debts.

No. 14, Answer. Deponent says he is the *bonâ fide* owner of the store held in his name and in his possession in Bloomfield; and it does not in fact belong to his father, Daniel Shaffer. Deponent is not merely his agent, and cannot return the store to his father at option. There is no secret agreement or understanding between the parties, and never was.

No. 15, Answer. Deponent attained his age of 21 years the 29th January 1842, and was in the employment of his father at the time.

No. 16, Answer. Deponent avows that he did not hold or possess any property of any consequence before he attained the age of 21 years.

No. 17, Answer. Deponent says he did not come into the possession of any property or money, by gift, devise, bequest or otherwise, when he attained the age of 21 years.

Deponent depended upon his skill as a merchant, and his own industry and care, to be able out of the stock, and its renewal, to meet the engagements he entered into for its purchase; and deponent now believes, if not too much obstructed in his business by these different suits, that he will beyond doubt be able to meet his said engagements.

Sworn and subscribed in open court, the 10th August 1843.

WASHINGTON SHAFFER.

Attest: A. T. TOPLEY, Clerk.

'[Shaffer v. Watkins.]

This is to show that I have this day bought the store of my father, Daniel Shaffer, taking the inventory of March 15, 1842, which amounts' to $3801.87½, after deducting the amount he has received from me since, taking the books of the establishment and agreeing to pay the following debts for him:

To pay Elizabeth Shaffer, with interest, .................... $2000.00
"     Matthew Patton, in 6 months, with interest......... 200.00
"     Jacob Laymaster,          "      ......... 300.00
"     Peter Cook,              "      ......... 300.00
"     Marshall College,       "      ......... 165.00
"     Lackens's heirs,        "      ......... 157.00
"     Kennedy & Julian, in Oct. 1842   "      ......... 684.00

Bloomfield, July 7th 1842.

We the undersigned do agree to the above statement, given under our hands and seals at Bloomfield, this 7th day of July 1842.

                     DANIEL SHAFFER,      [L. S.]
                     WASHINGTON SHAFFER, [L. S.]

Witness present—JOHN B. CARSON.

Know all men by these presents, That we the undersigned subscribers, of the borough of Mercersburg, in the county of Franklin, and State of Pennsylvania, are held and firmly bound unto Elizabeth Shaffer, of the borough of Mercersburg and county aforesaid, in the sum of $122, lawful money of Pennsylvania, to be paid to the said Elizabeth Shaffer, or to her lawful attorney, executors, administrators or assigns, annually during her natural life, to which payment well and truly to be made, we the said undersigned subscribers bind ourselves, our heirs, executors and administrators, and every of them, firmly, jointly and severally, by these presents, sealed with our seal, dated the 20th day of March 1841.

DANIEL SHAFFER,  [L. S.]     J. B. CARSON,  [L. S.]
J. H. MURPHY,      [L. S.]     WASHINGTON SHAFFER, [L. S.]
J. H. WILLIAMSON, [L. S.]

One year after the death of my grandmother, Elizabeth Shaffer, I promise to pay Daniel Shaffer $2000 in money, or that amount in store goods at cost and carriage, at my own option, for value received, with interest from this date, (the interest to be paid to Elizabeth Shaffer only). Given under my hand and seal, this 7th day of July 1842.           WASHINGTON SHAFFER, [L. S.]

I do hereby acknowledge myself bound, and I do hereby bind myself, my heirs, executors or administrators, to pay to my mother, Elizabeth Shaffer, the sum of $36, for releasing her dower, &c. in the house sold to George Gaff, and the sum of $36 for her dower in the house now occupied by my brother John Shaffer, and $50 for her dower in the house now occupied as a tavern by Ruth M'Clelland and Sisters, in all amounting to $122, which I

promise to pay her annually during her natural life. Witness my hand and seal, this 1st day of April 1833.

DANIEL SHAFFER, [L. S.]

Witness present—ALEXANDER SPEER.

Daniel Shaffer voluntarily appears to this proceeding and waives the writ of service, &c., and answers on oath the interrogatories filed, as follows, viz. The said Daniel being duly sworn in open court, deposes and says:

In answer to the 1st interrogatory. Part of the goods now in the store occupied by Washington Shaffer were owned by me, and are the same which were sent by me from Mercersburg, in Franklin county, to Bloomfield, in the spring of the year 1842. A large quantity of the stock composing the store at that time has since been sold out, and new purchases have been made of other goods by Washington Shaffer, which are now in the store, to which deponent never had any claim. The proportion sold, to those on hand of the old stock, the deponent cannot state.

2d Interrogatory. To 2d interrogatory, deponent says he did sell and transfer the said store to Washington Shaffer, at Bloomfield, the 7th July 1842; the terms and conditions and consideration of said transfer are truly and fairly set forth in an agreement made at the time, and dated the said 7th day of July 1842, witnessed by John B. Carson, and annexed to the answers given in this case by Washington Shaffer, which agreement is now referred to and makes part of this answer.

Interrogatory 3d. Deponent answers to this interrogatory, that the stock of goods brought by him from Mercersburg to Bloomfield was inventoried, and the cost prices affixed at the time of removal; and the value of the whole appears by the inventory, which this deponent believes is just and true, to amount to $3801. 87, after deducting 5 per cent. allowed on the purchase, and $890 which deponent had received out of the store in goods as money, which appears by the said inventory annexed to the answers of Washington Shaffer in this case, now referred to and made part of this answer.

No. 4. To 4th interrogatory, deponent answers that the inventory referred to was made at the time of the removal of the stock to Bloomfield, and the amount and value fairly appears by the same.

No. 5. Deponent answers to interrogatory 5th, that he was not to receive any portion of the consideration for which the store was sold, and never has received any of it; but the same was and is to be paid according to the terms of the said written agreement, one year after the death of deponent's mother. The $2000 mentioned in said agreement was to be paid to this deponent, for which Washington gave his note, which is attached to the answers given by Washington Shaffer to the interrogatories in this case, and made part of this answer.

[Shaffer v. Watkins.]

No. 6. Deponent answers to interrogatory No. 6, that no part of the consideration of said transfer or agreement on the part of Washington Shaffer was the payment of an annuity or gross sum to deponent's mother, in consideration of her releasing her interest in a recognizance in the Orphans' Court of Franklin county, which recognizance bound real estate sold by deponent in the spring of 1842, for the payment of interest arising annually from the sum of $2094, to the said Mrs Shaffer, during the term of her natural life.

No. 7. Deponent answers to the 7th interrogatory—says that Washington Shaffer was to pay the interest on $2000, which was $2 less than the actual sum stipulated to be paid her by this deponent, by and with his consent, during her natural life. He was not to pay any gross sum, but simply to take the place of this deponent in regard to said payment; and the engagement by Washington Shaffer to pay said interest was in part consideration of the purchase of said store; but no part of the consideration as above stated was her releasing any lien upon the real estate referred to, or any other real estate.

No. 8. The deponent answers to this interrogatory, it was a part of the contract between Washington and this deponent that he should pay the interest on $2000 annually to the mother of deponent, which was $2 less than the real sum by agreement between the parties, upon which interest was to be paid to her, agreeably to the note annexed to the answer of Washington Shaffer, and made part of the answer to this. In the event of her death, the said Washington was not to be released from further liability for the principal sum, and the store to be his absolutely. But the agreement of transfer was absolute and unconditional, and the engagement of Washington to pay the sums stated in the agreement was absolute and unconditional; and also his engagement to pay to deponent the said sum of $2000, one year after the death of said Mrs Shaffer, was also absolute and unconditional.

No. 9. Deponent answers to this interrogatory, that there are no goods, merchandise or other personal property of any description belonging to this deponent in the hands or possession of said Washington Shaffer; nor is there anything in the hands of any other person in Perry county, in any manner or way growing out of, relating to, or in any way connected with the transfer of the store, or the payment thereof; nor is there any moneys, debts, dues or demands of any kind or nature whatever, due or owing to deponent, or owing and which will become due hereafter from the said Washington Shaffer, nor from any other person, growing out of the foregoing transactions, or in any way connected with them. Deponent holds a note for about $156, so near as he recollects, given to him in March 1842 by John B. Carson, but in no way coupled or connected with the transactions above stated.

No. 10. Deponent answers to this interrogatory, that Washing-

[Shaffer v. Watkins.]

ton Shaffer is the absolute and *bonâ fide* owner of the store held by him and in his possession in Bloomfield, and in fact it does not belong to this deponent, nor has he any claim to it. The said Washington is not the mere agent of this deponent to sell the said goods and appropriate the moneys arising therefrom to the payment of such of deponent's creditors or debts as deponent has designated or may hereafter designate; and said goods were not placed in possession of said Washington Shaffer and held by him in his name for the purpose, principally or in part, of preventing the plaintiffs in this bill hereto annexed from taking said goods in execution to satisfy this judgment.

Sworn and subscribed in open court, the 10th August, A. D. 1843.

DANIEL SHAFFER.

Attest: A. T. TOPLEY, Clerk.

The matter was submitted upon the answers, and after argument the court rendered a judgment against the defendants on the ground that the transaction was fraudulent as to creditors. Upon this judgment the plaintiffs' attorney directed a *fieri facias* to be issued against Washington Shaffer and Daniel Shaffer, but it was issued to January term 1844 against Daniel Shaffer, with notice to Washington Shaffer; upon which the sheriff levied upon the property of Daniel Shaffer in the possession of Washington Shaffer, and sold it to the amount of $358.85, and returned his execution; whereupon the plaintiffs' attorney issued an *alias fieri facias* to the same term for the residue of the judgment. At the term to which these writs were returnable, a motion was made to set them aside; but the court refused the motion. Whereupon this writ of error was sued out, and the following errors assigned:

1. The court erred in entering judgment against Daniel and Washington Shaffer.

2. The court erred in issuing and sustaining the *fieri facias* upon said judgment.

3. The writs of *fieri facias* were erroneous, being a first and *alias* to the same term.

4. If the court had power, there was no ground for rendering judgment against the respondents.

5. No judgment can be rendered and *fieri facias* issued upon a bill of discovery.

*Reed* and *Watts*, for plaintiffs in error.
*Casey* and *Bard*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—The first, fourth and fifth errors are substantially the same, and may be considered together. They involve the merits of the case as appearing in the answers, and also the power

of the court to render judgment against the defendants. As to the merits of the case, we think it was abundantly shown by the facts and circumstances developed in the answers to the interrogatories, that the bill of sale from Daniel Shaffer to his son, executed on the 7th July 1842, was collusive and fraudulent in contemplation of law. It appears that it contained a secret trust to the amount of $2000, with interest, reserved for the benefit of the vendor; for though it nominally prefers Elizabeth Shaffer, his mother, yet by a separate paper of the same date, W. Shaffer binds himself to pay this sum on the death of his grandmother, Elizabeth Shaffer, to Daniel Shaffer the vendor. Nor is there any ground shown for the payment of this large sum of $2000 after the death of Elizabeth Shaffer to any person, even supposing the provision for paying the interest during the life of this aged female was a good consideration, so far, in respect to W. Shaffer. The circumstances also attending Washington Shaffer's becoming surety for this provision, by signing the instrument of the 20th March 1841, with other facts admitted, certainly lead to the strong suspicion that the transaction was concocted for the purpose, in a great degree, if not chiefly, of securing to Daniel Shaffer this large interest in the goods transferred. A trust of this kind, whether secret or avowed, in favour of the grantor, renders the transaction fraudulent and void in legal contemplation, even though there might be mingled with it provisions in favour of preferred creditors.

The power of the court in this proceeding must depend on the enactments of the Act of Assembly of the 16th June 1836, relating to executions, which, in its sections, from the 9th to the 18th inclusive, prescribes a system of proceeding. That part of this system which connects a bill of discovery with a proceeding by foreign attachment is new in our practice. It is supposed by the counsel for the defendants that the plaintiff is entitled to nothing more on his bill than a discovery; that the proceeding must rest there, and he must content himself to use it for the purpose of light and guidance merely, on levying his execution. On considering the various sections of the Act, however, we are satisfied that something more was intended. It is not possible to reconcile with this narrow construction of the Act the provision that a *scire facias* shall issue at the same time that the bill of discovery is filed; that the service of this writ shall give a lien on the personal property in the hands of the defendant which may be taken in execution like goods in the hands of a garnishee in foreign attachment; and with the provision in the 14th section that on the *scire facias* the defendants are to abide the judgment of the court in the premises. A view of the whole of the enactments on this subject induces us to think that the Legislature intended to make the proceedings substantially the same as in foreign attachment, with certain differences particularly mentioned, such as the em-

[Shaffer v. Watkins.]

ployment of a bill of discovery and interrogatories, instead of mere interrogatories; and that the bill may be filed against the defendant in the judgment and the person having possession of the estate or owning, &c.; and must set forth certain grounds for the complaint specified in section 11. It would seem, also, that the proceedings in foreign attachment on a *scire facias* against the garnishee are to be followed in this *scire facias;* that the defendant may plead to it and take issue, and have any disputed fact tried by jury; and that the court may render a judgment thereon, either on the verdict of the jury or otherwise, in the same manner as in the proceeding by foreign attachment. If so, then, where there is the verdict of a jury, by the provisions of the Act of the 13th June 1836, relative to foreign attachments, sections 58 and 59, if issue be taken and a trial be had on the *scire facias*, the jury are to find what goods or effects, if any, were in the hands of the garnishees at the time of the attachment executed or afterwards, and also the value thereof; and after a verdict for the plaintiff he may have execution of his judgment to be levied of the goods so found, and also execution against the garnishee as if *his proper debt*, if he neglect to produce the goods or pay the debt. But this is the only case in which it is required that the specific goods be levied on in the first instance; and it is after issue and verdict of a jury. By section 57, where the judgment is rendered by the court for neglect or refusal to appear and answer interrogatories, it is against the garnishee and his estate for the amount of the plaintiff's demand. No provision is made for the case that occurs where the defendants have answered interrogatories denying their liability, and judgment is rendered upon such interrogatories by the court, without any pleading to the *scire facias* or trial. But by analogy to the case provided for in section 57, and from the reasonable inference that the defendants have waived the privilege given by the 58th and 59th sections, by omitting to plead to issue and submitting to the court the trial of their defence *without* application for a different course, and from arguments of convenience as well as the joinder of the defendants, it would seem the judgment rendered by the court on the answers to these interrogatories may in such a case as the present be like that to be rendered by the 57th section, viz: against the defendants and their estates for the amount of the plaintiff's debt; such as seems to have been the kind of judgment entered in the case before us. There is no ground for the objection that it was entered against both defendants; for the Act of Assembly expressly authorizes the joinder of the original defendant and other persons in the *scire facias*, and the judgment of course may be joint; especially if the parties do not sever in their pleadings, or as here, do not plead at all.

2d, 3d, and 5th errors. If the judgment is joint, then the *fieri facias* ought to be joint, because execution must ensue the nature

of the judgment. The *præcipe* for the *fieri facias* was so; but the writ itself seems not to have conformed to the *præcipe*, being issued against Daniel with notice to Washington. This, however, is but a clerical error, which could be amended by the *præcipe*, and which may be considered here as so amended. The *alias fieri facias* being issued to the same term is irregular, and must be set aside; but for the reasons above given we see no reason for reversing any of the other proceedings.

*Alias fieri facias* reversed, and the other proceedings affirmed.