IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## MIDDLE DISTRICT—HARRISBURG 1871.

### Bentz, Garnishee, *versus* Rockey.

1. When there is no question of bankruptcy, the transfer of property by an insolvent debtor, to a creditor for a debt, accompanied by delivery of possession, is not fraudulent and void, if there be no intent to hinder, &c., creditors, though this may be the tendency.

2. Without legal fraud, it is the intent with which the transfer is made, not its effect, that characterizes the transaction as honest or fraudulent.

3. An insolvent selling property in payment of his debts, cannot reserve any of it for his own benefit; a stipulation for such reservation renders the transaction void.

4. Roller, a tanner, who was insolvent, transferred all his property to Bentz in payment of a debt, and received a note for a balance. At the time of the transfer, there was an understanding that Roller should get back part of the property for working out the tannery stock, and that the money was to be made out of the stock before the note should be paid. *Held*, that the transfer was void.

5. At the time of the transfer, Roller was lessee of the tannery. Bentz rented the tannery from Roller's landlord, and gave him a note for rent for the remainder of the year. Roller with the property remained on the premises as before, worked out the stock, which was sold, Bentz receiving the money. *Held*, there was not such a change of possession as would render the sale valid against creditors.

May 4th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD, and WILLIAMS, JJ.

Error to the Court of Common Pleas of *York county.* Of May Term 1871, No. 47.

This was an attachment execution issued, December 1st 1866, by John Rockey against David Roller, in which George Bentz was

(71)

[Bentz *v.* Rockey.]

garnishee, on a judgment in favor of Rockey recovered against Roller in Adams county, on the 29th of October 1866, and entered by transcript in the Common Pleas of York county, November 27th 1866.

Roller was a tanner, and on the 1st of September 1866, by bill of sale, sold all his stock in his tannery, his farming stock, &c., to Bentz, his father-in-law, for $3000. The plaintiff alleged that the sale was fraudulent: Bentz having sold the property and received the proceeds: Rocky attached them in his hands.

The case was tried December 13th 1870, before Fisher, P. J.

The plaintiff proved that Roller, in the fall of 1866, was in the occupancy of a tannery, which he rented from H. H. Wright, and that Bentz came there at that time and told Wright that Roller had sold to him the tanyard property; at Bentz's request, Wright rented the tan-yard to him till the next spring; and he gave Wright a note for the rent, for the remainder of the year. Roller gave up to Bentz all the personal property, and " Roller was paid by him to work it out."

Roller was called by the plaintiff, and testified: that he purchased hides from Rockey in April 1866, and confessed judgment to him for his indebtedness (the judgment in suit); he never paid for the hides. He delivered the hides to Bentz, at Wright's tan-yard. Bentz paid no money down; he delivered at the same time other hides, leather, horse, wagon, harness, &c., and "turned over to Bentz, corn and potatoes in the field;" also currying tables and tools, bark, household furniture, &c. Bentz agreed that Roller should tan out the stock; he was to have his living there for that purpose; was to have the corn, potatoes, horse, harness, &c., and the tools as wages to tan out the stock. Roller sold bark to Diehl, and from the proceeds paid Wright the rent due from Bentz. He sold some of the hides to Bear & Crane, Baltimore, and sent some to them to sell on commission; the money was paid to Bentz for both lots. He sold the horse, wagon, harness, &c., as his own, and used the potatoes and corn for his family. Bentz gave orders about the sales of the hides. Bentz, in October 1866, paid him in cash $1171.25, part of the price for the property he sold to Bentz; the whole property at the sale was valued at $3000. Witness made the assignment to Bentz because he was insolvent and could not pay his debts. He left the premises in April 1867. The plaintiff then closed.

The defendant gave in evidence the bill of sale, dated September 1st 1866, from Roller to Bentz, for hides, bark, &c., mentioned by Roller; "being in the house occupied by me, also in and about the tan-yard adjacent thereto, also in the fields and enclosures appertenant to the same:" the consideration was $3000: also note of same date, Bentz to Roller, for $1171.25, payable

[Bentz v. Rockey.]

in one year; also notes from Roller to Bentz, and notes for which he was security for Roller, amounting, principal, to $1785.

Bentz testified: "I was present when the bill of sale was written on 1st of September 1866; I live in Warrington township, twenty miles from where the property was; I took the bill of sale on Saturday; I could not take possession; about nine o'clock on Monday morning I went up there; I met Roller and Wright; I went up and told Mr. Wright we had made an agreement; I had bought the property of Roller; then I took possession; I gave Mr. Wright a note for the rest of the year; Mr. Wright agreed to take me for his tenant, and I gave the note; I employed Mr. Roller to work out the stock; I saw the bark there when I went up; the sides of leather were in the vats; the tools were in the tan-house; the horse was there, wagon was there, harness was there, saddle and bridle, wheelbarrows, oil barrel; do not know that I noticed the flour barrels; did not go out to see the corn and potatoes growing; I employed him the same day I took possession of the things, and left Roller there to work out the stock. * * * I afterwards paid this note for $1171.25; it was given for part of the tan-yard; this was part of the consideration; I paid this off to Roller on the 10th of October 1866; there was a lot of leather ready soon after I bought it; it was sent down to Baltimore; Roller and I went down to Baltimore; we sold it; I sold it to Bear & Crane; he owed Bear & Crane $500; I agreed that the $500 was to be paid out of this lot of leather; it was to go on this note; I then paid the balance of the note. * * * I paid this note off because Roller owed a heap and the people wanted their money; on the bark he owed it, and on money loaned; I owed the proceeds of the other leather sold; I paid off these notes; after I paid off these notes there was not any left; the money I made did not reach to pay the notes; about $40 short; I paid that out of my own pocket since; I kept the proceeds separate from my private funds, and when I got it I paid it out; I bought it to pay up the debts—the debts that Roller owed to the people; everybody that he owed, as far as I could; I paid no other debts but those for which I was liable; at the time of the signing of the bill of sale I was twenty miles from the tannery, and when the note for $1171 was given; on the day of the sale I did not see the property; the Monday I went there and did not move any of the property, nor do anything with the property; we moved the corner cupboard out of the house into the tan-yard house; we did not move the *cupboard* from the premises; I went away that day, and left everything as it was there; I left Roller there in charge of the property, and it continued in his possession until the 1st of April. * * * On Monday 3d of September 1866, it was agreed that he should get back the horse and the wagon, and the saddle and bridle, and the potatoes and the corn, and the tanner's tools. * *

[Bentz *v.* Rockey.]

He was to have the horse, wagon, harness, corn, potatoes and other things for working out the stock; the tools were also to be given."

The parties respectively submitted points which, with their answers, and also the parts of the general charge complained of, are found in the assignment of errors. Besides these, the plaintiff's fourth point, with its answer, is as follows:—

"The plaintiff's counsel have in their fourth point asked the court 'to charge the jury as to the nature and effect of legal fraud, and also as to the actual, open, exclusive and continuing change of possession required by law, in order to prevent a sale of personal property from being void against creditors of the vendor.'

"We answer this point as follows:—

"Legal fraud in an assignment of property is the absence of actual delivery of the property—such delivery as the nature of the property is susceptible of. The delivery must not be secret, but open, notorious and exclusive. The terms upon which it was transferred, to make it legal, must be free from all engagements to deliver any portion of it for the benefit of the vendor, or of any reservation of any portion of it for the future benefit of the vendor or for his advantage, as we have already stated in our answers to the plaintiff's 5th, 7th and 8th points."

The verdict was for the plaintiff against the garnishee for $1246.77.

The garnishee removed the case to the Supreme Court.

The errors assigned were the answers to the points, and portions of the charge, viz.:—

1. Plaintiff's 6th point: "That if the tendency and effect of the agreement and arrangement between Roller and Bentz, as to the property named in the bill of sale, was to hinder, defeat, or delay creditors of Roller or Rockey as one of those creditors, in the collection of a claim, the transaction was illegal and void as against such creditors."

Answer: "This point is correct."

2. Plaintiff's 7th point: "That if the jury believe from the evidence that while the assignment or bill of sale, was absolute on its face, there was an understanding and agreement between Roller and Bentz, by which Roller should receive a benefit by a return of a portion of the property, the transaction was illegal and void against his creditors."

Answer: "This point is correct."

3. Plaintiff's 5th point: "That if the jury find from the evidence that David Roller was insolvent at the date of the bill of sale— even though the consideration paid was, in part, a debt really due from Roller to Bentz, and that by the agreement and arrangement between them as to the property in question there was an

[Bentz v. Rockey.]

understanding between them which was not expressed in the bill of sale, that Roller should receive a benefit by a return of part of the property, or of the proceeds thereof, and that the transaction had a direct tendency to protect the property of Roller from the other creditors, the assignment is fraudulent and void as against creditors."

Answer : " This point is correct."

4. Plaintiff's 8th point: " That if the jury believe from the evidence that while in the bill of sale it was expressed to be for a consideration of $3000 to Roller in hand paid, yet if by the arrangement and agreement between Roller and Bentz for the transfer of the property $1171.25 of money was to be paid to Roller by Bentz out of the proceeds of the property .(Bentz to have (the) opportunity to realize the *same out of the property before paying it*), this was such a benefit secured to Roller as to render the transaction illegal and void against creditors and against Rockey as one of them."

Answer : " This point is correct."

5 and 6. In the general charge : " That if the jury believe from the evidence that Roller was insolvent at the time he made the assignment to Bentz, and that there was an agreement between Roller and Bentz, not inserted in the written transfer or assignment, that a portion of the property assigned or the proceeds thereof, should be returned to Roller and be for his benefit and advantage, and a note was given by Bentz to Roller, for the sum of $1171.25 ; that is such a reservation as would render the transaction fraudulent and void as to creditors, although it might be good as between the parties themselves.

" The evidence shows that Mr. Bentz had become the surety of Roller, his son-in-law, for a large amount, the notes and other evidences of indebtedness given in evidence clearly establish that fact, and also that Bentz paid them after the assignment to him. There was a method free from all legal objections by which he (Bentz) might have been secured ; that was to obtain judgment against Roller, issue execution, and sell Roller's property at sheriff's sale. Such a sale would have been legal. That method he did not pursue, and if he took a different course, and one which the law declares to be fraudulent as to creditors, he must suffer the consequences of his mistaken action."

7. Defendant's 1st point, and not fully answering it :—

" That the presumption of law is always in favor of innocence and against fraud, and fraud must therefore always be proved, and cannot be presumed ; and the jury are not at liberty to find the sale of property by Roller to Bentz to be fraudulent, in the absence of evidence to establish the fact either positive or circumstantial."

Answer : " The position of law as stated in this point is cor-

rect, but there are certain acts which constitute legal or technical fraud. Whether this comes within the rule relating to them, is a matter upon which the court will hereafter instruct you.

8. Defendant's 2d point:—

"If the debt which Roller owed Bentz was an honest one on the 1st of September 1866, Bentz had a perfect legal right to receive in payment of it any money or property which Roller had to give, provided he (Bentz) so received it without an intention to hinder, delay or defraud other creditors of Roller, and if the jury so believe, their verdict must be for the defendant, and the plaintiff cannot recover in this suit."

Answer: "If the debt which Roller owed Bentz was an honest one on the 1st of September 1866, Bentz had a perfect legal right to receive in payment of it any money or property Roller had to give, provided Bentz received it without an intention to hinder, delay or defraud creditors, or that the transfer had in law the effect to hinder, delay or defraud creditors."

*W. C. Chapman*, for plaintiff in error.—So long as a debtor retains dominion over his property, he may prefer one creditor to another, and such preference is not fraudulent either in *law* or in *fact:* Uhler *v.* Maulfair, 11 Harris 481; York County Bank *v.* Carter, 2 Wright 446; Covanhovan *v.* Hart, 9 Harris 495; Damon *v.* Bache, 5 P. F. Smith 67. Roller's secret intention alone could not invalidate the sale, as regards Bentz, unless he also had notice of it, and participated in it. Proviso to the stat. 13 Eliz., Rob. Dig. 295; Mateer *v.* Hissim, 3 Penna. R. 160; Thompson *v.* Lee, 3 W. & S. 479. In some circumstances legal presumption will not overturn honest sales. Long *v.* Knapp, 4 P. F. Smith 514; Bear's Estate, 10 Id. 430; Herron *v.* Fry, 2 Penna. R. 263.

*D. McConaughy* and *Cochran & Hays*, for defendant in error, cited Twynne's Case, 3 Coke 80; Clow *v.* Woods, 5 S. & R. 275; Babb *v.* Clemson, 10 Id. 429; Passmore *v.* Eldridge, 12 Id. 198; Streeper *v.* Eckart, 2 Wharton 302; Young *v.* McClure, 2 W. & S. 151; Brawn *v.* Keller, 7 Wright 106; McClurg *v.* Lecky, 3 Penna. R. 83; McCulloch *v.* Hutchinson, 7 Watts 434; Shaffer *v.* Watkins, 7 W. & S. 219; Connelly *v.* Walker, 9 Wright 449; Kepner *v.* Burkhart, 5 Barr 478; Kaine *v.* Weigley, 10 Harris 179.

The opinion of the court was delivered, May 11th, 1872, by

WILLIAMS, J.—Where there is no question of bankruptcy, the law does not adjudge the sale or transfer of property by an insolvent debtor in satisfaction of his indebtedness, when accompanied by actual delivery of possession, to be fraudulent and void, if there is no intent to hinder, delay and defraud creditors in the

[Bentz v. Rockey.]

collection of their claims, though this may be the tendency and effect of such sale or transfer. A debtor has the undoubted right to sell and dispose of his property, for the payment of his debts, and the payment of one creditor is no fraud upon other creditors. In the absence of legal fraud, it is the intent with which the sale or transfer is made, and not its tendency and effect, that gives character to the transaction, and stamps it as honest or fraudulent. If it be made with the honest intent of discharging the vendor's indebtedness to the vendee, the sale is not fraudulent though its tendency and effect may be to postpone other creditors or to prevent them from obtaining payment at all: Covanhovan v. Hart, 9 Harris 495; York Co. Bank v. Carter, 2 Wright 446. It follows that there was error in charging the jury, in affirmance of the plaintiff's sixth point, that if the tendency and effect of the agreement and arrangement between Roller and Bentz, as to the property named in the bill of sale, was to hinder, defeat or delay the creditors of Roller in the collection of their claims, the transaction was illegal and void as against such creditors. If, as the point impliedly admits, there was an absolute sale and delivery of the property, for a fair price, without any fraudulent intent, it is clear that the transaction was not illegal and void as against creditors, though it may have deprived them of the means of obtaining the payment of their claims. But while an insolvent debtor may make an absolute sale of his property in payment of his debts, he cannot reserve any portion of the property or its proceeds for his own benefit and advantage; and if he stipulates for such reservation, it will render the whole transaction fraudulent and void. In McClurg v. Lecky, 3 Penn. Rep. 91, Mr. Justice Rogers said: "The rule clearly deducible from all the cases is, that no debtor can, in an assignment, make a reservation, at the expense of his creditors, of any part of his income or property for his own benefit; nor can he stipulate for any advantage either to himself or family." This rule is equally applicable when the transaction takes the form of an absolute sale, and there is a secret stipulation by which some pecuniary benefit or advantage is reserved for the vendor. And, accordingly, it has been held that a bill of sale, absolute upon its face, by an insolvent debtor, and delivery of possession of the goods in pursuance of it, is fraudulent and void as against creditors, if accompanied by a secret trust from which the debtor might derive advantage or pecuniary benefit: McCulloch v. Hutchinson, 7 Watts 434; Shaffer v. Watkins, 7 W. & S. 219; Connelly v. Walker, 9 Wright 449. There was then no error in affirming the plaintiff's fifth, seventh and eighth points, and in instructing the jury, in conformity therewith, in the general charge, that if Roller was insolvent at the time he made the assignment to Bentz, and there was an agreement between Roller and Bentz, not inserted in the writ-

[Bentz *v.* Rockey.]

ten transfer or assignment, that a portion of the property assigned or the proceeds thereof, should be returned to Roller and be for his benefit and advantage — and a note was given by Bentz to Roller for the sum of $1171.25 — that is such a reservation as would render the transaction fraudulent and void as to creditors, although it might be good as between the parties themselves. There was abundant evidence to justify the court in giving the instruction and submitting the question to the jury. The bill of sale is absolute on its face, and yet by a secret verbal arrangement, as both parties admit, it was agreed that Roller should get back a portion of the property for working out or tanning the stock. What was this but a reservation of so much of the property for the use and benefit of Roller? Besides, the understanding, as Bentz testified, was, that the money was to be made out of the stock before he paid the note of $1171.25, given in part payment of its price. Nor was it by an independent subsequent agreement that a portion of the property was thus retained. It was part of the transaction and contemporaneous with its consummation. The bill of sale, it is true, was drawn up and signed on Saturday, in the borough of Dillsburg, about twenty miles from the tannery. But there was no delivery of the property, nor was it intended there should .be. Bentz went up to take possession on the following Monday, and it was then and there agreed that Roller should have the horse and wagon, saddle and bridle, the potatoes and corn, and the tanners' tools for working out the stock. How then can it be seriously claimed that a portion of the property was not reserved for the use of Roller? The bill of sale showed on its face that the whole of the property described in the schedule was purchased by Bentz, including the articles reserved, and yet the title to the latter did not pass by the sale as between the parties themselves, for they did not intend that it should. How could the creditors of Roller, by an inspection of the bill of sale, come to a knowledge of the fact that any portion of the property was his? Apparently, Bentz was owner of the whole, though he was secretly holding a part of it for Roller. If an absolute conveyance of goods to a creditor, accompanied by a secret trust, tends to delay, hinder and defraud creditors, and so is within the letter and spirit of the statute of 13 Elizabeth, as was said in Connelly *v.* Walker, it is clear that the sale in this case cannot stand.

Nor was there any error of which the defendant has any right to complain, in charging the jury that there was a method free from all legal objections by which the defendant might have been secured; that was to obtain judgment against Roller, issue execution and sell his property at sheriff's sale. Such a sale would have been legal. That method he did not pursue, and if he took a different course, and one which the law declares to be fraudulent

as to creditors, he must suffer the consequences of his mistaken action. The complaint is that this was indirectly telling the jury that the sale was fraudulent. But under the evidence the court might, and ought to have instructed the jury that the sale, whether fraudulent in fact or not, which was a question for their determination, was clearly fraudulent in law, because there was no such change of possession as the law requires in order to render a sale valid as against creditors. It was a clear case of retained possession by the vendor. There was not even a symbolical delivery of the property. After the sale all things continued as before, with the exception that Bentz become responsible for the rent of the tannery, which was afterwards paid by Roller out of the proceeds of the tan-bark which he sold to Diehl. That there was no change of possession whatever is shown by the testimony of Bentz. He says : " At the time of the signing of the bill of sale, I was twenty miles from the tannery, and when the note for $1171 was given, on the day of the sale, I did not see the property ; the Monday I went there and did not move any of the property, nor do anything with the property. We moved the corner cupboard out of the house into the tan-yard house—the tan-house ; we did not move the cupboard from the premises. I went away that day, and left everything as it was there. I left Roller there in charge of the property, and it continued in his possession until the 1st of April."

The next assignment of error embraces the answer to the defendant's first point, in which the court was asked to charge that the presumption of law is always in favor of innocence and against fraud ; and fraud must therefore always be proved, and cannot be presumed ; and the jury are not at liberty to find the sale of property by Roller to Bentz to be fraudulent, in the absence of evidence to establish the fact either positive or circumstantial. The court in answer said : " that the position of law as stated in this point is correct; but there are certain acts which constitute legal or technical fraud. Whether this case comes within the rule relating to them, is a matter upon which the court will hereafter instruct you." If the learned judge failed to give the instructions promised, as complained, it did the defendant no harm; but the complaint does not seem to be well founded ; for in a subsequent part of the charge the court instructed the jury that legal fraud in an assignment of property is the absence of actual delivery of the property—such delivery as the nature of the property is susceptible of. The delivery must not be secret, but open, notorious and exclusive. The terms upon which it is transferred, to make it legal, must be free from all engagements to deliver any portion of it for the benefit of the vendor, or of any reservation of any portion of it for the future benefit of the vendor or for his advantage. And the court left it to the jury, under these instructions,

[Bentz *v.* Rockey.]

to find whether the sale was fraudulent in law or not. As the court would have been justified in charging that, upon the defendant's own testimony, the sale was fraudulent in law, the instruction was more favorable to him than he had any right to ask.

We come now to the answer of the court to the defendant's second point, in which it is alleged that there was error. Correcting what is evidently a typographical mistake in the last clause of the answer as printed in the paper-book, by substituting "no" for "the" before the word "effect," the court instructed the jury that if the debt which Roller owed Bentz was an honest one, on the 1st of September 1866, Bentz had a perfect legal right to receive in payment of it any money or property Roller had to give, provided Bentz received it without an intention to hinder, delay or defraud creditors, or that the transfer had in law no effect to hinder, delay or defraud creditors. The last clause of the answer embraces the instruction complained of as erroneous. It will be seen that it is not the same proposition as that already considered in answer to the plaintiff's sixth point. There the instruction had reference to the tendency and effect of the sale as a matter of fact to be determined by the jury. Here the instruction has reference to the effect which the law imputes to the transaction. If the law adjudges its effect to be to hinder and defraud creditors, then it is to be regarded as fraudulent, though this may not have been the intention of the parties. This seems to have been the thought in the mind of the learned judge, though he may have failed to express it with his usual clearness. If, then, the meaning of the clause be as suggested, there was no error in the answer. We have now considered all the assignments except the last, which is not in accordance with the rule, and was abandoned on the argument, and we find no error in the instructions given to the jury except in charging that if the tendency and effect of the sale was to hinder, delay and defraud the creditors of Roller, then the sale was illegal and void as against such creditors. Must we reverse the judgment for this error ? Undoubtedly we must, if it did the defendant any harm. But if not, then we are not required to reverse the judgment and award a new trial, which could be of no possible benefit or advantage to the defendant. The sale, whether fraudulent in fact or not, was clearly fraudulent in law, not only because a portion of the property embraced in the bill of sale was secretly reserved for the use and advantage of Roller, but because there was no such delivery of the property or change of possession as the law requires. Upon no question of law presented by either of the points on which the court was requested to charge, nor upon any view of the facts as testified to by the parties to the sale, was the defendant entitled to a verdict. The error, therefore, did him no possible harm, and the judgment must be affirmed.

Judgment affirmed.