William Thornburn and Robert A. Murray, trading as Lowe, Donald & Co., v. Robert J. Thompson, trading as R. J. Thompson & Co., Defendant, and Lavinia B. C. Thompson, trading as Thompson & Co., Garnishee. Appeal of William F. Harrity, Assignee for Creditors of Lavinia B. C. Thompson, trading as Thompson & Co.

*Sale—Sheriff's sale—Fraud—Debtor and creditor.*

In an attachment execution against a wife by her husband's creditors, a verdict and judgment for plaintiffs will be sustained where there is evi-

dence tending to show that the defendant, while insolvent, confessed judgment to certain of his creditors, under an understanding that they would buy in his goods and turn them over to his wife; that the defendant should continue the business and pay to the preferred creditors the whole amount of their claims, and then have complete title in the name of his wife to all that was left, divested of all claims of other creditors.

Argued March 24, 1899.    Appeal, No. 57, Jan. T., 1899, by William F. Harrity, assignee, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1896, No. 372, on verdict for plaintiffs.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.    Affirmed.

Attachment execution.    Before PENNYPACKER, P. J.

The facts sufficiently appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiffs.    William F. Harrity, assignee for creditors of Lavinia B. C. Thompson, appealed.

*Error assigned* was in refusing to give binding instructions for garnishee.

*Dwight M. Lowrey,* with him *Alfred R. Haig,* for appellant.— The evidence of fraud was insufficient to submit to the jury: Walter v. Jones, 148 Pa. 589; Mead v. Conroe, 113 Pa. 220; Bank v. Tinker, 158 Pa. 17; Hagy v. Poike, 160 Pa. 526; Werner v. Zierfuss, 162 Pa. 360; Bear's Est., 60 Pa. 430; Hartman v. Shaffer, 71 Pa. 312; Lasher v. Medical Press Co., 3 Pa. Superior Ct. 571.

*Charles Biddle,* for appellee, cited Schott v. Chancellor, 20 Pa. 195; Twyne's Case, 1 Smith's Leading Cases, 44; McCulloch v. Hutchinson, 7 Watts, 434; Bentz v. Rockey, 69 Pa. 71; Connelly v. Walker, 45 Pa. 449; Gibbs v. Neely, 7 Watts, 307; Deakers v. Temple, 41 Pa. 234; Rogers v. Hall, 4 Watts, 359; Confer v. McNeal, 74 Pa. 112.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

The only assignment of error there is in this case is to the refusal of the court below to give a binding instruction to the jury that under all the evidence their verdict should be for

the defendant. This involves only the question whether there was any evidence, more than a scintilla, sufficient to sustain a verdict for the plaintiff. The contest was upon the validity, as against existing creditors of an insolvent, of a transaction between the debtor and a few of his creditors to whom preferences were given by means of judgments confessed in their favor, upon which executions were issued, the insolvent's property was seized and sold by the sheriff and bought in by the attorney for the preferred creditors. It was claimed and proved that on the afternoon of the day when the property was sold by the sheriff, an agreement was made by the purchasers with the wife of the debtor to sell and transfer to her the entire stock of goods purchased, taking from her judgment notes in favor of the preferred creditors in various amounts aggregating about $42,000, representing the whole of the indebtedness due to the preferred creditors. This plan was carried out and the debtor's wife was put in possession of the property on the same day, and she appointed her husband to manage the business, which he did, and conducted it until the issuing of the attachment by the present plaintiff. The wife of the insolvent debtor was made garnishee and, upon her answers filed and a plea of nulla bona, issue was joined and the cause tried before a jury. A large amount of testimony was given involving a great many matters of detail, and upon the whole case the contention of the plaintiffs was, that the transaction as between the preferred creditors and the debtor and his wife was, that an ulterior benefit to the debtor and his family was sought to be accomplished after the payment of the debts due to the preferred creditors out of the subsequent sales of the goods of the wife, the object of which was to hinder, delay and defraud the other creditors of her husband. On the trial the learned judge of the court below, after making a careful explanation to the jury of the precise matter they were to decide, submitted the whole question of fraudulent purpose to them, stating briefly the respective contentions of the parties. He called their attention specifically to the fact that no less than four witnesses, including the debtor and his wife, the attorney for the preferred creditors, and one of those creditors, all testified that there was no agreement or arrangement of any kind between them for any benefit or advantage to the debtor or his family to arise out of the transaction. He also

called their attention briefly to the contentions of the plaintiffs that certain facts given in evidence were consistent only with the theory that there must have been such an intent and purpose in the transaction, and hence that the entire arrangement was made in fraud of the rights of the plaintiffs and others, as creditors of the husband. The jury returned a verdict in favor of the plaintiffs, thus determining that there was a fraudulent intent and purpose in the transaction. The court below declined to interfere with the verdict, by refusing to grant a new trial, and it thus appears that both the jury and the court who heard and decided the case were of the same mind in regard to its fundamental character. It would not be within our power or right to reverse the judgment unless we should be thoroughly convinced upon a careful examination of the testimony that there was no evidence sufficient to sustain the verdict. We have made such an examination of the evidence, and we are quite unable to reach such a conclusion. The credibility of witnesses and the weight of the testimony are not for us to decide. We think there was a considerable amount of testimony developed that supports and sustains the verdict. Without going into a review of it all, it is enough to say that, if the judgments were merely given to secure the payment of honest debts without any further purpose, it was a very singular fact that immediately after the sheriff's sale the preferred creditors who had bought the whole stock of goods for about $16,000, should turn it all over to the wife of their debtor without receiving any money or security for it, taking her judgment notes for the whole amount of their debts, $42,000, and allowing her to appoint her husband as manager of the business without any agent of their own being placed in charge. The wife was not only a married woman, but she had no property or credit of her own, nor any competency to carry on such a business. Then too the manner in which the books were kept, and the books of Ellison & Company showing no credit to Thompson of the proceeds of sale until afterwards, when Mrs. Thompson, having the goods in her possession and making sales of them, made payments in cash which were credited on the old account. It is alleged and not denied that Mrs. Thompson, or her husband for her, gradually paid off the whole amount of the preferred debts, and then of course remained in possession of the stock

of goods and of the business, and thus the debtor and his wife were enabled to hold the property against the claims of the other creditors, and did reap a very solid advantage to themselves by means of the confessed judgments, sales to the preferred creditors and subsequent transfer of the whole stock of goods to the wife of the debtor. Now, while it is true that all of this might result consistently with an honest intent, yet it is just as true that it might be equally consistent with that kind of intent which the law characterizes as dishonest and fraudulent as against creditors. And it is mainly the intent which affects, one way or the other, the whole subject. There is no real dispute about the law of such cases. In Schott v. Chancellor, 20 Pa. 195, BLACK, C. J., after stating that a bona fide purchaser of chattels at a judicial sale might safely and lawfully leave them in the possession of the debtor, said : "If personal property is purchased at a sheriff's sale and left with the defendant in the execution, and it appears that the defendant himself furnished the money which paid for it, who can doubt that it might be taken again on another execution against the same person ? If the money was not furnished at the time, but paid afterwards, the case would be equally clear as showing, either that the pretended purchaser was a mere agent of the defendant, or else that a contract existed between them by which the title was to revert to the original owner when he refunded the price. Where the plaintiff in the execution is the purchaser at the sale, and he gives no credit for the proceeds, and afterwards receives full satisfaction of his debt in another way, there is still stronger reason for believing that the business was a sham from the beginning. In neither of these cases can it be said that the purchase was made in good faith, and it is only in favor of bona fide purchasers that the law will make an exception to the wholesome rule which requires possession of personal property to accompany and follow the transfer of title." In the recent case of Werner v. Zierfuss, 162 Pa. 360, our Brother MITCHELL, in a contest very much like the present in some of its circumstances, summed up the legal aspect of the subject thus : " It would seem to follow necessarily from the foregoing that where there is payment of an actual debt there can be no question of fraud in fact for the jury without additional evidence of something which may be considered, either in itself or in its connec-

tion with the circumstances, a badge of fraud. What evidence will be sufficient for that purpose will of course depend upon the circumstances of each case. It may be of excess in amount in a judgment, of inadequate price in a conveyance, of reservation of advantage to the grantor, as in Bentz v. Rockey, 69 Pa. 71, or of giving the debtor a weapon to force other creditors to a compromise, as in Bunn v. Ahl, 29 Pa. 387, or the more common case of delaying or hindering them altogether. The forms and devices of fraud are legion, and it would be vain to attempt to enumerate or define them, but it may be said as a general rule, that to impeach the payment or securing of an actual debt, there should be evidence tending to show either, first, some other advantage or benefit to the debtor beyond the discharge of his obligation; or, secondly, some other benefit to the creditor beyond mere payment of his debt; or, lastly, some injury to the other creditors beyond mere postponement to the debt preferred." After referring to some of the facts in the particular case, the opinion proceeds: "These facts, while not perhaps of much weight singly, went to show that the relations between Zierfuss and Gross were very close, and their transactions proper for investigation. We cannot say that they were not sufficient to justify the court in putting the whole law on the subject before the jury. Whether the verdict was in accord with the weight of the evidence is not for us to determine." In Bentz v. Rockey, 69 Pa. 71, we said: "But, while an insolvent debtor may make an absolute sale of his property in payment of his debts, he cannot reserve any portion of the property or its proceeds for his own benefit and advantage; and if he stipulates for such reservation it will render the whole transaction fraudulent and void. In McClurg v. Lecky, 3 P. & W. 91, Mr. Justice ROGERS said, ' The rule clearly deducible from all the cases is that no debtor can, in an assignment, make a reservation at the expense of the creditors of any part of his income or property for his own benefit; nor can he stipulate for any advantage either to himself or family.' This rule is equally applicable when the transaction takes the form of an absolute sale, and there is a secret stipulation by which some pecuniary benefit or advantage is reserved for the vendor, and accordingly it has been held that a bill of sale absolute upon its face by an insolvent debtor, and delivery of possession of the goods in

pursuance of it, is fraudulent and void as against creditors, if accompanied by a secret trust from which the debtor might derive advantage of pecuniary benefit."

Applying this doctrine in the present case, it is almost impossible to resist the conviction that there was a secret understanding when the judgments were confessed that the goods should be bought in by the preferred creditors, and thereupon ostensibly sold to the defendant, using his wife as a medium, and that the defendant should continue the business and pay to the preferred creditors the whole amount of their claims, and then have complete title in the name of his wife to all that was left, divested of all claims of other creditors. This was precisely the course of the subsequent events, and it cannot be wondered that the jury found that it was the result of a previous understanding of some kind between the preferred creditors and their debtor. We are of opinion that the case was rightly tried and disposed of in the court below, and therefore dismiss the assignment of error.

Judgment affirmed.